UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONTEZ D. MOSES,

               Plaintiff,

                              Case No. 2:25-cv-10852
                              District Judge Robert J. White
                              Magistrate Judge Anthony P. Patti

v.


TIC, TURINI, and SEYMOUR,

               Defendants.

_____/

## ORDER DENYING PLAINTIFF'S MOTIONS FOR APPOINTMENT OF COUNSEL (ECF No. 31, 32)

**A. Instant Motion**

Currently, before the Court are Plaintiff's February 25, 2026 and March 6, 2026 motions for appointment of counsel.  Plaintiff respectfully requests that counsel be appointed for him in this civil matter for a multitude of reasons, including: his inability to afford counsel; anticipated hurdles related to discovery, cross-examination, and expert testimony; his mental disability; an unsuccessful pursuit in finding his own representation; and, his limited knowledge of the law.   (ECF No. 32, PageID.155-156.)

### B. Recruitment of Counsel

As a preliminary matter, the Court does not have the authority to appoint a private attorney for Plaintiff in this civil matter.  Proceedings in *forma pauperis* are governed by 28 U.S.C. §1915, which provides that "[t]he court *may* request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1) (emphasis added).  However, even if circumstances of Plaintiff's case convinced the Court to engage in such a search, "[t]here is no right to recruitment of counsel in federal civil litigation, but a district court has discretion to recruit counsel under 28 U.S.C. § 1915(e)(1)." *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 657 (7th Cir. 2014) (emphasis added).  The appointment of counsel in a civil case, therefore, "is a privilege and not a right." *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987) (internal quotation and citation omitted).

With respect to prisoner civil rights cases, the Court of Appeals for the Sixth Circuit has held that "there is no right to counsel in prisoner civil rights cases. [internal citation omitted] The appointment of counsel in a civil proceeding is justified only by exceptional circumstances." *Bennett v.* Smith, 110 F. App'x 633, 635 (6th Cir. 2004).  In evaluating a matter for "exceptional circumstances," a court should consider: (1) the probable merit of the claims, (2) the nature of the case, (3) the complexity of the legal and factual issues raised, and (4) the ability of the litigant to represent him or herself. *Lince v. Youngert*, 136 F. App'x 779, 782

2

(6th Cir. 2005); *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993); *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985).  The Court has considered these factors here and denies the motion.

### C. Analysis

#### 1.      Probable merit of Plaintiff's claims

Plaintiff, a state prisoner, brings this action alleging that Defendant failed to take his mental health concerns seriously, which ultimately resulted in a severe deterioration in Plaintiff's mental health condition and Plaintiff receiving a misconduct sanction for a serious assault on another inmate. (ECF No. 1, PageID.4.)  At this stage in the litigation, it is too early for the Court to judge the merits of the Plaintiff's claims.  The Court generally waits to seek *pro bono* counsel until the case survives all dispositive motion practice.  This is due to the limited number of *pro bono* counsel who are willing and available, and the significant number of individuals who would like the help of volunteer attorney services.

The Court has not yet ruled on Defendants Tic and Turini's motion for summary judgment, under Fed. R. Civ. P. 56. (ECF No. 26.)  It is premature for the Court to assess the merits of the Plaintiff's claims when a summary judgment motion remains unresolved.

### 2.      Nature of the case and the complexity of the issue

Plaintiff asserts that his case "will require medical expert (psychiatric/psychological) testimony and explanation for which the Plaintiff is incapable of expounding on." (ECF No. 32, PageID.155.)  He also states that, "this case will require discovery, which will most likely require the production of e-mails and other documents that the department will not provide to Plaintiff for security purposes[.]" (*Id.*)  Requests for documents and resistance for security reasons is not unusual in prison litigation.  Plaintiff's assertion that his case will require expert testimony is simultaneously speculative and insufficient to justify the recruitment of counsel at this time.  He fails to identify specific factual or legal issues that would be too complex for him to "expound on."  And just because expert testimony is a foreseeable possibility at this stage does not guarantee it will be required.  In any case, experts do not usually appear without being paid for their time and effort.  Plaintiff is forewarned that "[p]ayment of litigation expenses is the prisoner's responsibility." *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997).  A prisoner must bear his own costs of discovery. *Johnson v. Hubbard*, 698 F.2d 286, 289 (6th Cir. 1983) ("there is no constitutional requirement to waive costs of transcripts, expert witness fees, and fees to secure depositions."). *See also Jones v. Ahmed*, No. 19-3393, 2020 WL 2062280, at *3

4

(6th Cir. Feb. 10, 2020) ("pro se litigants do not have the right to have an expert witness appointed at the government's expense.")  Moreover, counsel may be very reluctant to go out-of-pocket and advance the expenses associated with the retention of experts, and indeed may shy away from taking on this case if they are reluctant to even temporarily fund an expert review; however, even if the lawyer is willing to advance costs, the repayment of the costs "shall ultimately be the responsibility of the client." Mich. R. Prof. Conduct 1.8(e)(1).  In any case, the need for expert testimony is neither unusual nor exceptional, particularly in cases involving medical care, which make up a large portion of prisoner civil rights litigation.

Plaintiff also claims he has limited knowledge of the law (ECF No. 32, PageID.156.)  The Court acknowledges that Plaintiff may not have legal knowledge; however, this is true of most *pro se* litigants.  Though having counsel would be helpful in this matter, it is not an exceptional circumstance for a *pro se* litigant to be without legal knowledge.  Indeed, it is the same position in which all but a handful or legally trained *pro se* litigants find themselves.

Plaintiff also claims that "a trial in this case will likely involve conflicting testimony, and counsel would better enable Plaintiff to present evidence and cross examine witnesses[.]" (*Id*.)  This may well be true. In fact, most trials involve conflicting testimony, and counsel may be better suited than Plaintiff to present

evidence and cross-examine witnesses.  However, neither of these change the nature of the case's complexity or set this case apart from other *pro se* cases in a way that persuades this Court to recruit counsel.  Therefore, the Court cannot find that the nature and complexity of this case favor the recruitment of counsel at this time.

### 3. Indigency and ability of Plaintiff to represent himself

Plaintiff claims he cannot afford counsel. (ECF No. 32, PageID.155.)  The Court will assume this to be accurate, since it previously granted Plaintiff's application for *in forma pauperis* status (ECF No. 9), coupled with the fact that Plaintiff is incarcerated.  However, "indigence alone … is not an exceptional circumstance." *Buchanan v. Lee*, 618 F. Supp. 3d 707 at 712 (M.D. Tenn. 2022).

In Plaintiff's first motion to appoint counsel (ECF No. 31), he states that he has an unspecified "psychiatric illness" that renders him "incapable of understanding the fullness of my inability to legally comprehend litigation or perfecting my legal claims …." (ECF No. 31, PageID.151.)  In other words, he claims that he "cannot understand what he cannot understand."

In his second motion to appoint counsel (ECF No. 32), Plaintiff asserts he is incapable of understanding the legal issues before him and is also incapable of "fully expounding and perfecting [his] claims[,]" but it is not entirely clear what he means by "perfecting claims." (ECF No. 32, PageID.155.).  To support this,

6

Plaintiff attaches what appears to be a notice of a January 13, 2026 hearing for involuntary psychiatric medication under *Washington v. Harper*, 494 U.S. 210 (1990) ("*Harper* Hearing") (ECF No. 31, PageID.152) and a single, unsigned page of what purports to be the January 6, 2026 mental health evaluation from Dr. Vasilis Pozios in support of the need for a *Harper* Hearing. (*Id*., PageID.153.)  The evaluation indicates that "starting in 2024" Plaintiff has had significantly impaired judgment that causes him to minimize or deny his documented psychiatric symptoms leading to his failure to recognize the need for treatment, suicidal and self-injurious behavior, and an impaired ability to recognize reality (including auditory hallucinations). (*Id*.)   It does not comment on his intellectual capabilities, intelligence quotient, ability to express himself or his ability to understand.  It also provides no insight into the frequency of Plaintiff's hallucinations, which may well be intermittent or infrequent, or which may now be controlled by medication. Nor is there any evidence that he has been adjudged incompetent.

While the Court does not discount Plaintiff's mental health and the corresponding challenges he encounters, mental impairments standing alone are not enough to justify appointment of counsel. *See Deatrick v. Unknown Dalton Unknown David Willis Chapman Kristopher Steece*, No. 1:23-cv-12942, 2024 U.S. Dist. LEXIS 105392, at *7 (E.D. Mich. June 12, 2024).  In fact, Plaintiff has coherently and meaningfully communicated with the Court thus far in a neat, clear,

and intelligent manner, comparable to many and even beyond the aptitude of a good number of prisoner litigants that this Court has previous encountered. Plaintiff has demonstrated his ability to file and respond to motions, highlight relevant factual allegations and identify their respective legal issues. He has done so as recently as in his second motion to appoint counsel (ECF No. 32) and in response to Defendant's motion for summary judgment (ECF No. 28.). And he has consistently communicated in type-written font as well as in neat, understandable handwriting. Indeed, Plaintiff's own pleadings demonstrate an ability to explain the manifestations and severity of his mental health condition, express the need for them to be taken seriously and addressed with treatment, attribute his "mental breakdown" to "not being seen or taken serious[ly]," and allege that the Defendants' misplaced focus on "writing a misconduct report" and failure to address these issues led to a hunger strike, an attempt to hang himself and transfer "to a higher level of mental health care[,]" all of which form the gravamen of this lawsuit. (See ECF No. 1, PageID.3-5, ¶¶ 5-11.)

Unfortunately, it is not extraordinary for incarcerated *pro se* litigants to encounter various mental health challenges, including self-injurious behaviors and a failure to recognize the need for treatment. This Court genuinely wishes Plaintiff success in managing these difficulties, but is unable to find, based on the full record of this case, that his mental impairments require the Court's effort to recruit

8

counsel at this time.  The Court recognizes that Plaintiff's mental health concerns may present obstacles later in the litigation, particularly if this case proceeds to trial. But, at that point, the Court often does engage in a search for willing and able *pro bono* counsel.

Lastly, Plaintiff states he has "made repeated attempts at obtaining legal representation from private attorneys and legal entities, neither which have responded to the Plaintiff's inquiries as to their availability[.]" (ECF No. 32, PageID.156.)  Given the limited number of lawyers who are willing to take on these assignments when the case is already in trial mode, the Court knows from experience that obtaining qualified counsel for incarcerated litigants is even more unlikely during pretrial proceedings, when costs and the expenditure of time without remuneration can become onerous to licensed attorneys.  These circumstances do not persuade the Court to request appointment of counsel for Plaintiff, when he himself has confirmed the difficulty of finding willing and available attorneys at this stage of the proceedings. (*Id.*)

Therefore, Plaintiff does not present an exceptional circumstance which would presently warrant this Court's intervention.  If this case survives summary judgment and is proceeding to trial, the Court can revisit whether to recruit counsel.

9

**D. Order**

Accordingly, Plaintiff's motions for appointment of counsel (ECF No. 31, 32) are **DENIED WITHOUT PREJUDICE.** Plaintiff may petition the Court for the recruitment of *pro bono* counsel if this case survives all dispositive motion practice, proceeds to trial, or other exceptional circumstances demonstrate such a need in the future.

**IT IS SO ORDERED.**[1]

Dated: April 27, 2026

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

---

[1] The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).