**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MONTEZ MOSES,

        Plaintiff,

v.

BIANCA TIC, et al.,

        Defendants.

Case No. 2:25-10852
District Judge Robert J. White
Magistrate Judge Anthony P. Patti

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO
GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
THE BASIS OF EXHAUSTION (ECF NO. 26)**

**I.**    **RECOMMENDATION**: The Court should **GRANT** Defendants' motion

for summary judgment on the basis of exhaustion. (ECF No. 26.)

**II.**    **REPORT:**

    **A.**    **Background**

Plaintiff Montez Moses, a state prisoner, initiated this action on February 7,

2025 in the Western District of Michigan, alleging constitutional violations while

housed at the Macomb Correctional Facility in New Haven, Michigan. (ECF No.

1, PageID.2.)  Specifically, Plaintiff brought suit against Defendants Bianca Tic,

Jordan Turini and Unknown Seymour in their official and personal capacities,

alleging they acted with deliberate indifference to his mental illness and that they filed a retaliatory misconduct charge against him. (ECF No. 1, PageID.5-6.)

The case was transferred to this district and assigned to Judge Robert J. White, who dismissed the official capacity claims, the claims asserted against Defendant Seymour, and the First Amendment retaliation claim. (ECF No. 10, PageID.20.) Thus, the only claim still pending in this action is the Eighth Amendment deliberate indifference claim against Defendants Tic and Turini. (*Id.*)

Judge White referred the case to me "for all pretrial proceedings, including a hearing and determination of all non−dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B)." (ECF No. 20, PageID.62.) On November 14, 2025, Defendants filed a motion for summary judgment on the basis of exhaustion. (ECF No. 26.) The motion has been fully briefed. (ECF Nos. 28 & 30.)

### B. Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

## C.    Discussion

### 1.    Allegations in the Complaint

Plaintiff asserts that in October 2023 he was housed in a mental health unit at the Macomb Correctional Facility's Residential Treatment Program. On October 27, 2023, he informed corrections officer Seymour that he needed to see his mental health provider, Defendant Turini. Plaintiff said that he was hallucinating and having suicidal thoughts. (ECF No. 1, PageID.3, ¶ 1-2).

According to Plaintiff, Defendant Tic, a mental health provider at the unit, informed Seymour that Turini was not working and would return to work on

Monday, October 30, 2023. (*Id.*, ¶ 3).  Upon hearing this, Plaintiff "asked  C/O

Seymour to call [the] medical [unit] back because he was not feeling good

mentally and was going down the rabbit hole fast and needed to talk/see somebody

urgently." (*Id.*, ¶ 4).  Plaintiff states that Seymour contacted Tic again, and told

Plaintiff that Tic told him that she would not see Plaintiff and would not put him

on suicide watch until after the appointment. (*Id.*, PageID.3-4, ¶ 5).

Plaintiff asserts that he then had a mental breakdown resulting in a serious

assault misconduct. (*Id.*, PageID.4, ¶ 6).  Records attached to the complaint

indicate that Plaintiff repeatedly stabbed another inmate in the head and arm with a

five-inch metal shank that evening. (*Id.*, PageID.16-19).

Defendant Turini saw Plaintiff in segregation on October 30, 2023. She

completed a misconduct sanction "Determination of Responsibility" form and

placed him on suicide watch because he had ingested a handful of white pills. (*Id.*,

PageID.4, ¶ 7).  Plaintiff tried to inform Turini about his mental state, but he claims

she told him that "his mental breakdown had no impact on the [m]isconduct ticket

he caught."  (*Id.*, ¶ 8.)  Plaintiff asserts that she "was more focused on writing a

misconduct report than treating [his] [p]sychiatric needs."  (*Id.*, ¶ 9).  Plaintiff

claims that the lack of treatment caused him to refuse meals from November 4,

2023 until November 13, 2023, and to attempt to hang himself on November 15,

2023. (*Id.*, PageID.4-5, ¶ 10-11). Plaintiff was transferred to another prison with a higher level of mental health care the following day. (*Id.*, PageID.5, ¶ 11).

Plaintiff asserts that he completed the grievance process for these claims.

### 2.    Failure to exhaust and PLRA cases

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

The Supreme Court has held that "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or

demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216.  As such, defendants bear the burden of proof on exhaustion.  *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

"Once an affirmative defense is asserted, it may be adjudicated at any point in the development of a lawsuit that the rules of procedure allow. As the *Jones* Court noted, because a plaintiff need not anticipate or plead around an exhaustion defense, that defense usually may not be addressed in a motion under Rule 12(b)(6) for failure to state a claim." *Anderson v. Jutzy*, 175 F. Supp. 3d 781, 786 (E.D. Mich. 2016) (Lawson, J., adopting in part report and recommendation of Whalen, M.J.) (citing *Jones*, 549 U.S. at 215).  To the extent the record permits, the Court addresses whether a prisoner has exhausted administrative remedies under Federal Rule of Civil Procedure 56.  *See Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc); *see also Melton v. Michigan Corr. Comm'n,* No. 07–15480, 2009 WL 722688, at *6 (E.D. Mich. Mar. 17, 2009) (resolving failure to exhaust administrative remedies in a motion for summary judgment). "The summary judgment motion is especially well suited to pretrial adjudication of an exhaustion defense, because proof of lack of exhaustion generally requires resort to matters outside the pleadings, such as affidavits or documentary evidence." *Anderson*, 175 F. Supp. 3d at 787.

### 3.     Analysis

### a. Plaintiff's Grievances

Under MDOC Policy Directive ("PD") 03.02.130, "Prisoner/Parolee Grievances" (eff. date Sept. 25, 2023), within two business days of a grievable issue, a grievant must attempt to reconcile the issue with the staff member involved; if not resolved, the grievant must then file a Step I grievance within five business days. (ECF 26-2, PageID.101.)  Complaints filed by prisoners are only exhausted when the grievance is pursued through all three steps of the grievance process as defined by PD 03.02.130.  (ECF No. 26-2, PageID.98.)

Defendants have submitted Plaintiff's Step III grievance report, which is authenticated by Carolyn Nelson's affidavit.  (ECF No. 26-3, PageID.107-108.) The grievance report shows one grievance pursued through Step III, MRF-24-03-0518-28E ("MRF 518").  (ECF No. 26-3, PageID.108.)  In MRF-518, which was signed on March 17, 2024, Plaintiff asserted "mental health negligence" related to the events of October 27, 2023.  (ECF No. 26-3, PageID.112.)  Specifically, Plaintiff related how he asked Seymour to contact Turini, but Tic told Seymour that Turini was not at work and Plaintiff would have to wait to speak to Turini until Turini returned to work.  (*Id.*)  Plaintiff stated in his grievance that the same day he was in an "unstable state of mind" and he consequently acquired an assault misconduct.  (ECF No. 26-3, PageID.112.)  Plaintiff also asserted that expressing

8

to a corrections officer that he was in an unstable state of mind and "nothing being done" is "mental health negligence." (*Id.*)  MRF-518 does not mention any events which occurred after October 27, 2023, including his subsequent meeting with Defendant Turini on October 30, or any of the events of November, but instead focuses solely on being deprived of mental health treatment on October 27, 2023.

MRF-518 was rejected at Step I for being untimely, with a notation "grievances shall be filed within 7 days of incident." (ECF No. 26-3, PageID.112-113.)  Plaintiff appealed to Step II, again focusing solely on the events of October 27, 2023, without mentioning anything occurring thereafter.  (ECF No. 26-3, PageID.110.)  The Step II response states:

> After review, the Step I response was appropriate.  In addition, at the time you received your misconducts, you were in the Residential Treatment Program.  A QMHP completed a Misconduct Sanction Assessment/Determination of Responsibility Form (CSJ-331) which determined that you were responsible for your actions.
>
> Grievance Rejection upheld at Step II.

(ECF No. 26-3, PageID.111.)  Plaintiff filed a Step III appeal, and received a response stating, "The rejection is upheld."  (ECF No. 26-3, PageID.109.)

### b.  Grievance Exhaustion

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.  The prison's grievance process determines when a prisoner has properly exhausted his

9

or her claim. *Id*. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Thus, the PLRA requires not only exhaustion, but *proper* exhaustion. *See Woodford*, 548 U.S. at 92 (concluding that if a prisoner fails to file a procedurally proper grievance, he fails to satisfy the PLRA's exhaustion requirement).

There is no dispute in this matter that MRF-518 was untimely. It was rejected at Step I as untimely, the grievance rejection was upheld at Step II, and again the rejection was upheld at Step III. Because his grievance was rejected for procedural reasons as untimely, Plaintiff did not properly exhaust his claims. *Gardner v. Michigan Dep't of Corr.*, No. 18-1609, 2018 WL 8454299, at *4 (6th Cir. Dec. 18, 2018) ("Because these grievances were rejected for procedural reasons, they do not suffice to exhaust Gardner's claims."). "[P]roper exhaustion requires compliance with the grievance policy's requirements, including timeliness." *Hannon v. Brintlinger*, No. 2:17-CV-33, 2018 WL 1141424, at *1 (W.D. Mich. Mar. 2, 2018) (citing *Vandiver v. Correctional Med. Servs., Inc.*, 326 Fed. App'x 885, 889 (6th Cir. 2009)); *see Woodford*, 548 U.S. at 90-91; ("Proper exhaustion demands compliance with an agency's deadlines and other critical

procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

Although Plaintiff argues that the Court should address the merits of his grievance, he does not specifically challenge the finding of untimeliness or argue that the grievance was wrongfully rejected. Thus, Plaintiff has waived any argument as to whether the grievance was wrongfully rejected for timeliness. *Garrett v. Morgan Cnty. Sheriff's Off.*, No. 1:23CV2011, 2026 WL 352788, at *9 (N.D. Ohio Feb. 9, 2026) ("It is well established that, if a party fails to address an argument raised in a motion or brief in opposition, a district court may deem that party to have waived opposition to that argument."); s*ee also Notredan, L.L.C. v. Old Republic Exch. Facilitator Co*., 531 Fed. Appx 567, 569 (6th Cir. 2013) (explaining that failure to respond to an argument that a claim is subject to dismissal "amounts to a forfeiture of [that] claim"); *Degolia v. Kenton Cty.,* 381 F.Supp.3d 740, 759–60 (E.D. Ky. 2019) ("[I]t is well understood...that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (quoting *Rouse v. Caruso*, 2011 WL 918327 at *18 (E.D. Mich. Feb. 18, 2011)) (internal quotation marks omitted)); *Albury v. Strategic Staffing Solutions*, 2025 WL 2552164 at * 3 (E.D. Mich. Sept.

4, 2025) (noting that "failure to address an argument serves as a waiver of challenging that argument.").

Moreover, even if he had raised the issue here, he would be barred from asserting it in this litigation because during the grievance process, Plaintiff did not contest the finding of untimeliness, nor did he provide any excuse or justification for his failure to timely grieve the October event. "Where grievants fail to raise issues that could have been, but were not, raised during the grievance process, they may not raise that issue in subsequent litigation." *Adams v. Poupard*, No. 2:23-CV-47, 2024 WL 5125814, at *6 (W.D. Mich. Nov. 22, 2024), *report and recommendation adopted*, No. 2:23-CV-47, 2024 WL 5118607 (W.D. Mich. Dec. 16, 2024) (citing

*Bailey v. Michigan Dep't of Corr.*, No. 1:23-CV-57, 2024 WL 3759785, at *4 (W.D. Mich. July 9, 2024), *report and recommendation adopted*, No. 1:23-CV-57, 2024 WL 3756405 (W.D. Mich. Aug. 12, 2024) (citing *Jones v. Bonevelle*, No. 11-2242 (6th Cir. Mar. 30, 2012))).

Indeed, the only arguments presented in Plaintiff's response brief are: (1) the Step I and Step III rejections did not provide any explanation for the rejections or description for how the grievance was untimely; and, (2) the Step II rejection addressed the merits of the grievance.

12

First, as Defendants point out, there is nothing in the MDOC's grievance policy the requires a detailed explanation for the rejection of a grievance. (ECF No. 30, PageID.141.) Instead, the policy states "[i]f the grievance is rejected, the grievance response shall state the reason for the rejection without addressing the merits of the grievance." (ECF No. 26-2, PageID.102.) At Step I, the written response states "grievances shall be filed within 7 days of incident," and the official rejection letter states "grievance untimely" and "Your grievance is rejected at Step I because it is UNTIMLEY." (ECF No. 26-3, PageID.112-113.) At Step III, the decision states, "The rejection is upheld." (ECF No. 26-3, PageID.109.) Contrary to Plaintiff's argument, no further explanation was required under the policy, as Plaintiff's rejection expressly stated that it was rejected as untimely, and the written response even stated that grievances needed to be filed within seven days of the incident. Moreover, as Defendants assert, given that the incident occurred in October, and the grievance was not filed *until March of the following year*, the untimeliness was readily apparent.

Second, Plaintiff argues that at Step II the MDOC addressed the merits of Plaintiff's grievance, implying that Defendants waived the procedural bar of untimeliness. "When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010)

13

(citing *Vandiver v. Correctional Med. Servs., Inc.*, 326 F. App'x 885, 891 (6th Cir. 2009)).  But this is not what happened here.  At Step II, the MDOC response stated, "After review, the Step I response was appropriate" and "Grievance Rejection upheld at Step II."  (ECF No. 26-3, PageID.111.)  This language clearly indicates that the basis for the rejection is the reason given at Step I, untimeliness, and does not constitute a denial on the merits.  It is true that the MDOC also stated "[i]n addition, at the time you received your misconducts, you were in the Residential Treatment Program.  A QMHP completed a Misconduct Sanction Assessment/Determination of Responsibility Form (CSJ-331) which determined that you were responsible for your actions."  (*Id.*)  But this language came after the determination that the Step I response was appropriate, and does not form the basis of the rejection of the grievance.  Indeed, the grievance was *rejected* at each step of the process, rather than *denied*, indicating a reliance on the procedural bar rather than a merits determination.  *Compare Martin v. Goings*, No. 2:18-CV-00173, 2020 WL 6135853, at *2 (W.D. Mich. Sept. 23, 2020), *report and recommendation adopted sub nom. Martin v. Maclaren*, No. 2:18-CV-173, 2020 WL 6131424 (W.D. Mich. Oct. 19, 2020) ("But the fact that the grievance was 'denied' and not 'rejected' and that the grievance denial states that Plaintiff's grievance 'was in fact considered, investigated, and a proper decision was rendered" strongly suggest that the denial was on the merits.').

14

### D.   Conclusion

Because Plaintiff did not timely grieve the incidents of October 27, 2023, and because his untimeliness was the basis of the MDOC's rejection of his grievance, the Court should find that his claims are unexhausted and **GRANT** Defendants' motion for summary judgment on the basis of exhaustion.[1] (ECF No. 26.)

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within **14 days** of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others

---

[1] Even if the Court were to find that Defendants waived the procedural bar of untimeliness and addressed MRF-518 on the merits, the Court should nonetheless grant Defendants' motion in part as to Defendant Turini and as to any events that occurred after October 27, 2023.  The only incident raised in Plaintiff's grievance relates to the incidents of October 27, 2023, and Defendant Turini is mentioned only with respect to her not being at work that day.  (ECF No. 26-3, PageID.112.) There is no description of any of the events of November, or any alleged malfeasance that was allegedly done by Defendant Turini.  *See Reed-Bey*, 603 F.3d at 324 (6th Cir. 2010) ("Under the [MDOC's] procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' *in their initial grievance*.") (emphasis added).

with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than **14 days** after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  June 15, 2026

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE